# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

vs.

**Case No. 3:11-cr-00066 (JAP)**

GEORGE HOLLEY and PHAIROT
IAMNAITA,

Defendants.

**Oral Argument Requested**

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS COUNTS ONE THROUGH SIX AS DUPLICITOUS, TO MERGE COUNTS TWO THROUGH FOUR AS MULTIPLICITOUS, AND TO STRIKE SURPLUSAGE FROM THE INDICTMENT UNDER FEDERAL RULE OF CRIMINAL PROCEDURE 7(D)

---

**MARINO, TORTORELLA & BOYLE, P.C.**
**437 Southern Boulevard**
**Chatham, New Jersey 07928-1488**
**(973) 824-9300**
*Attorneys for Defendant George Holley*

**CRITCHLEY, KINUM & VAZQUEZ, LLC**
**75 Livingston Avenue**
**Roseland, NJ 07068**
**(973) 422-9200**
*Attorneys for Defendant Phairot Iamnaita*

On the Brief:

    Kevin H. Marino, Esq.
    John D. Tortorella, Esq.
    John A. Boyle, Esq.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..........................................................................................................ii

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

LEGAL ARGUMENT ...................................................................................................................5

I.      THE INDICTMENT IS DEFECTIVE BECAUSE IT IS AT ONCE
        DUPLICITOUS AND MULTIPLICITOUS.........................................................................5

    A.   Counts One Through Six Of The Indictment Should Be Dismissed As Duplicitous
        Because They Improperly Join Disparate Alleged Instances Of Tipping In A
        Single Count. ..............................................................................................................5

    B.   Counts Two Through Four Of The Indictment Should Be Dismissed As
        Multiplicitous Because They Improperly Charge A Single Alleged Instance Of
        Securities Fraud In Multiple Counts.........................................................................8

II.     IF COUNTS ONE THROUGH SIX ARE NOT DISMISSED AS DUPLICITOUS
        OR MULTIPLICITOUS, THE ALLEGATIONS RELATING TO TIPPING
        INVESTORS WHO ARE NOT INCLUDED IN ANY COUNT SHOULD BE
        STRICKEN AS SURPLUSAGE. .........................................................................9

    A.   Allegations In The Indictment Relating To The Alleged Tipping Of Investors #2,
        #3 and #4 In Counts One Through Six Should Be Stricken As Surplusage........................9

    B.   Allegations In The Indictment Relating To Holley's Production Of Documents To
        The Securities and Exchange Commission And References To The Investigation
        By The FBI and U.S. Attorney's Office In Counts Seven And Eight Should Be
        Struck As Surplusage................................................................................................16

CONCLUSION...............................................................................................................................23

## TABLE OF AUTHORITIES

<u>**Cases**</u>

Bell v. United States,
  349 U.S. 81 (1955) .................................................................................................... 6

Hobley v. Lotito,
  No. 03 C 3678, 2004 U.S. Dist. LEXIS 20844 (N.D. Ill. Oct. 13, 2004) ................................ 20

United States v. Alsugair,
  256 F. Supp. 2d 306 (D.N.J. 2003) .................................................................... 12, 15

United States v. Black,
  No. 05 CR 727, 2007 U.S. Dist. LEXIS 81777 (N.D. Ill. Nov. 5, 2007) ................................ 20

United States v. Bullock,
  451 F.2d 884 (5th Cir. 1971) .............................................................................. 10

United States v. Cooper,
  384 F. Supp. 2d 958 (W.D. Va. 2005) ................................................................ 10

United States v. Davis,
  183 F.3d 231 (3d Cir. 1999) ......................................................................... 20, 21

United States v. Dunn,
  434 F. Supp. 2d 1203 (N.D. Ala. 2006) ...................................................... 20, 21, 22

United States v. Flemming,
  617 F.3d 252 (3d Cir. 2010) ............................................................................ 22

United States v. Gabriel,
  125 F.3d 89 (2d Cir. 1997) ............................................................................. 19

United States v. Gatto,
  746 F. Supp. 432 (D.N.J. 1990) ....................................................................... 15

United States v. Giampa,
  904 F. Supp. 235 (D.N.J. 1995) ....................................................................... 10

United States v. Haddy,
  134 F.3d 542 (3d Cir. 1998) ...................................................................... 5, 6, 8

United States v. Hartsell,
  127 F.3d 343 (4th Cir. 1997) ........................................................................... 10

United States v. Hedgepeth,
  434 F.3d 609 (3d Cir. 2006) .......................................................................... 9, 10

United States v. Ho,
    651 F. Supp. 2d 1191 (D. Haw. 2009) ........................................................................ 20

United States v. Jardine,
    No. 04-219, 2004 U.S. Dist. LEXIS 20414 (E.D. Pa. Oct. 12, 2004) ................................ 12, 13

United States v. Lalley,
    No. 10-326, 2010 U.S. Dist. LEXIS 106857 (D.N.J. Oct. 5, 2010) .............................. 9, 10, 11

United States v. Langford,
    946 F.2d 798 (11th Cir. 1991) ................................................................................... 6, 8

United States v. Ng,
    26 Fed. Appx. 452 (6th Cir. 2001) ................................................................................ 9

United States v. Peterson,
    627 F. Supp. 2d 1359 (M.D. Ga. 2008) ...................................................................... 20

United States v. Phillips,
    583 F.3d 1261 (10th Cir. 2009) ................................................................................ 19

United States v. Pollen,
    978 F.2d 78 (3d Cir. 1992) .......................................................................................... 8

United States v. Ramos,
    537 F.3d 439 (5th Cir. 2008) ............................................................................... 19, 22

United States v. Rigas,
    605 F.3d 194 (3d Cir. 2010) ..................................................................................... 5, 6

United States v. Root,
    585 F.3d 145 (3d Cir. 2009) ..................................................................................... 6, 7

United States v. Schlei,
    122 F.3d 944 (11th Cir. 1997) ..................................................................................... 6

United States v. Simpson,
    No. 3:09-CR-249, 2011 U.S. Dist. LEXIS 76881 (N.D. Tex. July 15, 2011) ................... 20, 22

United States v. Williams,
    203 F.2d 572 (5th Cir. 1953) .................................................................................... 17

**Statutes**

18 U.S.C. § 1503 ............................................................................................................ 20

18 U.S.C. § 1515(a)(1)(A)-(D) .................................................................................... 19, 22

**<u>Rules</u>**

Black's Law Dictionary (9th ed. 2009)...........................................................................21

**<u>Regulations</u>**

Fed. R. Crim. P. 7(d)...........................................................................................................9

**<u>Journals & Treatises</u>**

1 Charles Alan Wright *et al*, Fed. Prac. & Proc. Crim. § 128 (4th ed.).........................9

1A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Crim. § 142 (4th ed.).......................6

## **PRELIMINARY STATEMENT**

Defendants, George Holley ("Holley") and Phairot Iamnaita ("Iamnaita"), respectfully submit this memorandum of law in support of their motion to dismiss Counts One through Six of the Indictment as duplicitous, to merge Counts Two through Four as multiplicitous, and to strike surplusage from any remaining counts of the Indictment pursuant to Federal Rule of Criminal Procedure 7(d). The Indictment charges Holley and Iamnaita with securities fraud, wire fraud and conspiracy to commit securities fraud, and also charges Holley with obstruction of justice. Although the Indictment should be dismissed for violating Defendants fifth and sixth amendment rights as set forth in Defendants' accompanying motion, it is defective for the additional reasons that it improperly joins separate offenses in a single count and includes a host of irrelevant and prejudicial allegations and references.

The securities fraud, wire fraud and conspiracy allegations contained in Counts One through Six of the Indictment suffer from duplicity because they allege that Holley tipped Iamnaita, Investor #1, Investor #2, Investor #3 and Investor #4 as part of a single scheme, rather than charging each tip as a separate violation of the securities laws. If Holley and Iamnaita were convicted on any of these counts, therefore, it would not be clear whether the jury convicted them on the basis of evidence relating to alleged tips to any one of the investors or some combination of them. This is the classic danger that the doctrine of duplicity protects against, and the Court should therefore dismiss Counts One through Six on that ground.

If the Court determines that Counts One through Six — or some subset of them — are not duplicitous, it should strike as surplusage a host of irrelevant and prejudicial allegations in any undismissed count(s). These include: (1) allegations that Holley tipped three investors in addition to those he is expressly charged with tipping; (2) references to unidentified "others" as

1

participants or co-conspirators in the charged conduct; and (3) references to investigations unrelated to the official proceeding Holley is charged with impeding (and, in so doing, obstructing justice). These additional allegations and references are irrelevant and prejudicial. Accordingly, they must be stricken from the Indictment should the Court deny Defendants' Motion to Dismiss.

## STATEMENT OF FACTS

The Indictment alleges that Holley and Iamnaita participated in an insider trading scheme in which Holley provided material nonpublic information to Iamnaita and others who traded on the information and thereby received illegal profits. (Indictment, Counts One through Four, ¶¶ 2-31.) Count One of the Indictment charges Holley with insider trading for allegedly disclosing inside information to Investor #1 about the anticipated acquisition of HDI by Nipro. (Id., Counts One through Four, ¶ 21, 31.) Holley is alleged to have specifically told Investor #1 that a company wished to acquire Home Diagnostics and that the negotiations were going well. (Id., Counts One through Four, ¶ 21.) Counts Two through Four charge Holley and Iamnaita with insider trading regarding three purchases of Home Diagnostics stock made on behalf of Iamnaita in January 2010. (Id., Counts One through Four, ¶ 31.) The Indictment alleges that Holley disclosed inside information to Iamnaita and Iamnaita executed the purchase of Home Diagnostics stock based on that information. (Id., Counts One through Four, ¶¶ 3-5, 31.) Although paragraph 31 does not identify the alleged purchases by Investor #2, Investor #3 or Investor #4, the trades of those investors are included as part of the scheme to defraud as described in paragraphs 2, 4 and 5 of Counts One through Four. (Id., ¶¶ 2, 4-5.)

Count Five of the Indictment charges Holley and Iamnaita with conspiracy to commit securities fraud. (Id., Count Five, ¶¶ 1-3.) The Indictment alleges that Holley and Iamnaita conspired and agreed with each other and others to commit securities fraud through the insider

2

trading scheme charged in Counts One through Four.  (Id.)  The Indictment alleges that the Defendants committed three overt acts in furtherance of the conspiracy: (1) Holley sent a $121,700 check to CW-1 to fund the purchase of Home Diagnostics stock on behalf of Iamnaita; (2) CW-1 wired approximately $120,000 from a bank account to a Merrill Lynch account for Iamnaita; and (3) CW-1 and Iamnaita caused the purchase of 6,050 shares of Home Diagnostics stock in the Merrill Lynch account.  (Id., Count Five, ¶ 3.)  Count Five incorporates by reference paragraphs 2, 4 and 5 of Counts One through Four, which allege that the insider trading scheme included a plan for Investors #1-4 to trade on material non-public information supplied by Holley.  (Id., Count Five, ¶ 1.)

Count Six of the Indictment charges Holley and Iamnaita with wire fraud based on the wire transfer of $120,000 from CW-1's bank account to the Merrill Lynch account established for Iamnaita's benefit.  (Id., Count Six, ¶¶ 1-2.)  Count Six also incorporates by reference paragraphs 2, 4 and 5 of Counts One through Four, which allege that the insider trading scheme included a plan for Investors #1-4 to trade on material non-public information supplied by Holley.  (Id., Count Six, ¶ 1.)

Counts Seven and Eight charge Holley with obstruction of justice. (Id., Counts Seven and Eight, ¶¶ 1-7.)  Count Seven alleges that after Holley learned that the FBI had contacted Investor #3 in November 2010,[1] he reminded Investor #3 that Holley had previously given Investor #3

---

[1] The Indictment contains a clerical error regarding the date on which Holley allegedly "reminded Investor #3 that he had previously given Investor #3 several analyst reports concerning Home Diagnostics." (Indictment, Counts Seven and Eight, ¶ 5.)  In paragraph 26 of Counts One through Four, the Indictment alleges that Holley sent Investor #3 analyst and news reports regarding HDI in "late 2009."  In paragraph 5 of Counts Seven and Eight, the Indictment alleges that Holley reminded Investor #3 about those reports in November 2009 after learning that Investor #3 had been contacted by the FBI.  Given that HDI was not sold until February 2010, it is clear that the reference in paragraph 5 of Counts Seven and Eight should be to November 2010, not November 2009.

analyst reports concerning Home Diagnostics.  (Id., Counts Seven and Eight, ¶ 5.)  Count Eight alleges that after the FBI approached Investor #2 in December 2010 regarding his purchase of Home Diagnostics stock, Holley told his assistant to give Investor #2 analyst and news reports concerning Home Diagnostics.  (Id., Counts Seven and Eight, ¶¶ 3-4.)

       In addition to the charged conduct, the Indictment alleges conduct that is not related to the charges in Counts One through Eight.  First, in the section regarding Counts One through Four, the Indictment alleges that Holley disclosed inside information to three investors — Investors #2, #3, and #4 — about the anticipated merger between Home Diagnostics and Nipro.  (Id., Counts One through Four, ¶¶ 23-30.)  The Indictment alleges that Holley disclosed inside information to Investor #2, including that Home Diagnostics was going to be purchased by another company, and recommended that Investor #2 purchase Home Diagnostics stock.  (Id., Counts One through Four, ¶ 23.)  According to the Indictment, Holley told Investor #2 to consider the information a bonus (i.e., part of his compensation as an employee of one of Holley's companies).  (Id.)  The Indictment goes on to allege that Holley disclosed inside information to Investor #3, including that Home Diagnostics was likely going to be purchased, and told Investor #3 that it was a good opportunity to make money on Home Diagnostics stock.  (Id., Counts One through Four, ¶ 27.)  Holley is also alleged to have told Investor #3 that he was calling from a telephone line that was not traceable back to Holley.  (Id.)  The Indictment further alleges that Holley disclosed inside information to Investor #4 regarding the anticipated acquisition of Home Diagnostics by Nipro.  (Id., Counts One through Four, ¶ 29.)  Paragraph 31 of Counts One through Four does not expressly charge Holley with a crime relating to Holley's alleged disclosures to Investor #2, #3, and #4, and the paragraphs regarding Holley's specific interactions with those investors are not realleged in Counts Five through Eight.

Second, in Counts Seven and Eight, the Indictment alleges that in April 2010 Holley produced analyst reports and press releases concerning Home Diagnostics to the U.S. Securities Exchange Commission ("SEC") in response to an investigative subpoena that did not call for their production.  (Id., Counts Seven and Eight, ¶ 6.)  The Indictment does not charge Holley with impeding any proceeding before the SEC.  Those Counts also allege that Holley impeded investigations being conducted by both the United States Attorney's Office (USAO) and the FBI into insider trading in HDI stock.     (Id., Counts Seven and Eight, ¶ 7.)  Neither a USAO investigation nor an FBI investigation, however, is an "official proceeding" for purposes of an obstruction of justice charge.  This motion follows.

## **LEGAL ARGUMENT**

## I.   **THE INDICTMENT IS DEFECTIVE BECAUSE IT IS AT ONCE DUPLICITOUS AND MULTIPLICITOUS.**

### A.   **Counts One Through Six Of The Indictment Should Be Dismissed As Duplicitous Because They Improperly Join Disparate Alleged Instances Of Tipping In A Single Count.**

Duplicity describes "the improper joining of distinct and separate offenses in a single count."  United States v. Rigas, 605 F.3d 194, 210 (3d Cir. 2010) (en banc).  The danger posed by a duplicitous count is that it "'may conceal the specific charges, prevent the jury from deciding guilt or innocence with respect to a particular offense, exploit the risk of prejudicial evidentiary rulings, or endanger fair sentencing.'"  Id. (quoting United States v. Haddy, 134 F.3d 542, 548 (3d Cir. 1998)).  As explained succinctly by one commentator:

> The vice of duplicity is that there is no way for a jury to convict on one offense and acquit on another offense contained in the same count.  A closely related problem is that, because the jurors have two crimes to consider in a single count, they may convict without reaching a unanimous agreement on either.  A general verdict of guilty will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other.  This uncertainty could prejudice

> defendant in sentencing, in any appellate review, and in guarding
> against double jeopardy.

1A Charles Alan Wright *et al.*, Fed. Prac. & Proc. Crim. § 142 (4th ed.).  As the Third Circuit

has held, "[a]n impermissibly duplicitous indictment is subject to dismissal." Rigas, 605 F.3d at

210; United States v. Schlei, 122 F.3d 944, 979-80 (11th Cir. 1997) (holding that a duplicitous

securities fraud count contained an offense not properly venued for trial, and that the lack of any

assurances of jury unanimity required vacation of the conviction on that count).

      To determine whether a particular count in an indictment challenged as duplicitous

properly charges a violation of the pertinent statute, the court must first determine how Congress

defined the allowable unit of prosecution.  Bell v. United States, 349 U.S. 81 (1955); United

States v. Root, 585 F.3d 145, 150 (3d Cir. 2009).  The Third Circuit has held that the allowable

unit of prosecution under Section 10(b) of the Exchange Act and Rule 10b-5 may vary

depending on the type of fraud at issue.  Haddy, 134 F.3d at 549.  Where, for example, the

scheme to defraud involves a manipulation of securities prices of separate companies, it may be

appropriate to charge the scheme as to each company in a separate count.  Id. at 549.  In other

cases, however, the allowable unit of prosecution may be a discrete purchase or sale of a

security.  United States v. Langford, 946 F.2d 798, 803 (11th Cir. 1991).  In this case, the

Indictment alleges that the scheme to defraud involves purchases of HDI stock by disparate

investors based on material non-public information provided by Holley.  The allowable unit of

prosecution in this case, therefore, should be the purchases made by those individual investors.

To decide otherwise would risk implicating each of the concerns that give rise to the duplicity

doctrine:  (1) avoiding the uncertainty of whether a general verdict of guilty conceals a finding of

guilty as to one crime and a finding of not guilty as to another; (2) avoiding the risk that the

jurors may not have been unanimous as to any one of the crimes charged; (3) assuring the defendant adequate notice; (4) providing the basis for appropriate sentencing; and, (5) protecting against double jeopardy in a subsequent prosecution.  Root, 585 F.3d at 154.

In this case, the Indictment alleges that Holley tipped Iamnaita, Investor #1, Investor #2, Investor #3 and Investor #4 with material non-public information regarding the HDI tender offer as part of a scheme that would allow each of them to profit from that information.  (Indictment, Counts One through Four, ¶¶ 2, 4-5, 6-7, 21-30.)  Paragraph 31 of Counts One through Four identifies the specific trades by which Holley and Iamnaita are alleged to have committed securities fraud as charged in those four counts.  Specifically, Count One charges Holley with engaging in insider trading by tipping Investor #1, and Counts Two through Four charge Holley and Iamnaita with engaging in insider trading — Holley as tipper and Iamnaita as tippee — with respect to trades made on Iamnaita's behalf.  Thus, neither in those counts nor elsewhere in the Indictment are Holley or Iamnaita charged with insider trading with respect to Investor #2, Investor #3 or Investor #4.  (Indictment, Counts One through Four, ¶ 31.)  Nevertheless, because the Indictment makes allegations regarding these investors throughout the preceding thirty (30) paragraphs of Counts One through Four, there is a significant risk that a jury might rely solely upon evidence relating to those allegations to find Holley and/or Iamnaita guilty on Counts One through Four.

The same risk is presented in Counts Five and Six, which incorporate by reference paragraphs 2, 4 and 5 of Counts One through Four.  Because the securities fraud counts and the conspiracy and wire fraud counts that relate to them incorporate allegations regarding Investors #1-4, there is a significant danger that the jury could convict Holley and Iamnaita without reaching a unanimous verdict regarding the conduct charged by the grand jury.  For the

foregoing reasons, we respectfully submit that the Court should dismiss Counts One through Six as duplicitous.

**B.    Counts Two Through Four Of The Indictment Should Be Dismissed As Multiplicitous Because They Improperly Charge A Single Alleged Instance Of Securities Fraud In Multiple Counts.**

In addition to being duplicitous because they implicitly incorporate allegations regarding Investors #1-4, Counts Two through Four are multiplicitous.  United States v. Pollen, 978 F.2d 78, 83 (3d Cir. 1992).  Counts are multiplicitous when they charge a single offense in more than one count.  Haddy, 134 F.3d at 548 n. 7.  Multiplicitous charges pose two dangers.  First, as the Third Circuit has explained, a multiplicitous indictment may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause.  Pollen, 978 F.2d at 82. Second, "a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes — not one."  Langford, 946 F.2d at 802.

In this case, Counts Two through Four of the Indictment charge the exact same securities trade as three separate offenses.  In paragraph 16 of Counts One through Four, the Indictment alleges that Dudas and Iamnaita instructed their broker to use the entire $120,000 deposited in their joint Merrill Lynch brokerage account to purchase shares of HDI.  The paragraph goes on to allege that the broker acted on those instructions by purchasing more than 18,000 shares of HDI stock between January 19, 2010 and January 26, 2010.  (Indictment, Counts One through Four, ¶ 16.)

Paragraph 31 of Counts One through Four, however, charges Holley and Iamnaita with three separate counts of securities — one for each block of trades the broker executed to complete the order.  This is a classic instance of multiplicity because Counts Two, Three and Four each charge the same securities transaction allegedly authorized by Dudas and Iamnaita. Accordingly, Holley and Iamnaita respectfully request that the Court merge the multiplicitous

counts if they are not dismissed for the other reasons raised in Defendants' motions. United States v. Ng, 26 Fed. Appx. 452, 461 (6th Cir. 2001) ("The remedy for multiplicitous prosecutions and convictions is for the sentencing court to vacate or merge any multiplicitous counts.")

## II.   IF COUNTS ONE THROUGH SIX ARE NOT DISMISSED AS DUPLICITOUS OR MULTIPLICITOUS, THE ALLEGATIONS RELATING TO TIPPING INVESTORS WHO ARE NOT INCLUDED IN ANY COUNT SHOULD BE STRICKEN AS SURPLUSAGE.

### A.   Allegations In The Indictment Relating To The Alleged Tipping Of Investors #2, #3 and #4 In Counts One Through Six Should Be Stricken As Surplusage.

Rule 7(d) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment…." Fed. R. Crim. P. 7(d). As the Advisory Committee Note to the rule explains, the rule provides "a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Advisory Committee Note to Fed. R. Crim. P. 7(d). This protection is necessary because "[p]rosecutors have been known to insert unnecessary allegations for 'color' or 'background[,]' hoping that these will stimulate the interest of jurors.'" 1 Charles Alan Wright *et al*, Fed. Prac. & Proc. Crim. § 128 (4th ed.).

In keeping with the Advisory Note, on motions to strike surplusage from an indictment, the Third Circuit applies a conjunctive test, which permits the district court, "upon the defendant's timely motion," to strike surplusage from an indictment when it is both irrelevant or immaterial and prejudicial. United States v. Hedgepeth, 434 F.3d 609, 613 (3d Cir. 2006); United States v. Lalley, No. 10-326, 2010 U.S. Dist. LEXIS 106857, at *8 (D.N.J. Oct. 5, 2010). An indictment may include matters that the Government intends to prove at trial, even if those matters are not essential elements of the crime charged, provided that they are "'in a general

9

sense relevant to the overall scheme charged in the indictment.'" Lalley, 2010 U.S. Dist. LEXIS 106857, at *8 (quoting United States v. Giampa, 904 F. Supp. 235, 271-72 (D.N.J. 1995)). However, as one court aptly explained:

> *Rule 7(c) of the Federal Rules of Criminal Procedure* provides that "the indictment . . . must be a *plain, concise, and definite* written statement of the *essential* facts constituting the offense charged." *Fed. R. Crim. P. 7(c)*(emphasis added in decision). This provision contemplates an indictment that merely pleads each of the factual elements of the offense charged. It does not contemplate the inclusion of every piece of evidence that ultimately may be relevant to building a case against the defendant. If it did, a criminal indictment would be free to grow from a "plain and concise" statement of "essential" facts to an unreadable monstrosity discussing every piece of evidence that would be conceivably relevant at trial. Indeed, the Government would be free to use an indictment to thoroughly present its case to the jury before the trial even began, at a time when the defendant would not be entitled to defend himself. Although the cases defining surplusage sometimes inquire as to whether the material is "relevant to the charges," [citation omitted], this language should not be read as permitting any material that would be legally relevant at trial. Because so much material can qualify as legally relevant, such a reading would contravene the explicit language of Rule *7(c)*. Rather, as described by the Fourth Circuit in [United States v. Hartsell, 127 F.3d 343, 353 (4th Cir. 1997)], the question is whether that material is "unnecessary" in making out a *prima facie* pleading of the violation.

United States v. Cooper, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005), *aff'd*, 482 F.3d 658 (4th Cir. 2007). Language that serves only to "inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts" is considered prejudicial. United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971). Applying the conjunctive test as set forth in Hedgepeth, it is clear that portions of the Indictment should be stricken because they are both immaterial and prejudicial to the Defendants.

10

1.      All References To Investor #4 Should Be Stricken As Surplusage

The Indictment alleges that Holley disclosed inside information to Investor #4 and that Investor #4 purchased Home Diagnostics stock based, in part, on the inside information (Indictment, Counts One through Four, ¶¶ 29-30).   The alleged tipping of inside information to Investor #4, however, is **not** alleged in the Indictment (a) to be the basis of any of the four counts for securities fraud (Id., ¶ 31); (b) to be an overt act in furtherance of the alleged conspiracy to commit securities fraud (Id., Count Five , ¶ 3); (c)  to have any connection with the alleged wire fraud  (Id., Count Six, ¶ 2); or (d) to have any connection with the alleged obstructive of justice offenses.   (Id., Counts Seven and Eight, ¶¶ 2-7.)   Indeed, the specific tipping allegations pertaining to Investor #4, which are set forth in ¶¶ 29-30 of Counts One through Four, are not realleged in Counts Five through Eight, as these counts only reallege paragraphs 1 through 5 and 8 through 20 of Counts One through Four.  (Id., Count Five, ¶ 1; Count Six, ¶ 1; Counts Seven and Eight, ¶ 1.)  Moreover, Investor #4 is not alleged to be a coconspirator with Holley and Iamnaita  (Id., Count Five, ¶ 2.)  Thus, the allegations relating to Investor #4 are wholly irrelevant as to all of the charges in the Indictment and serve only to "inflame the jury, confuse the issues, and blur the elements necessary for conviction under the separate counts" for securities fraud, conspiracy to commit securities fraud, wire fraud, and obstructive of justice.

The Government may argue that the allegations involving Investor #4 are relevant to the overall insider trading scheme alleged in the Indictment and thus permissible.  Lalley, 2010 U.S. Dist. LEXIS 106857, at *8.  However, the existence of an overall insider trading scheme is not necessary to sustain the charges against Defendants.   Moreover, although the Indictment characterizes the alleged insider trading as a single "insider trading scheme," it is actually only charged in the specific securities fraud counts as two separate schemes: one involving Holley and Iamnaita and the other involving Holley and Investor #1.  In Count One, Holley is charged with

11

insider trading in connection with Investor #1's purchase of 1,000 shares of Home Diagnostics stock on January 15, 2010.  (Indictment, ¶ 31, Count 1.)  In Count Two, Holley and Iamnaita are charged with insider trading in connection with Iamnaita's purchase of 6,050 shares of Home Diagnostics stock on January 19, 2010.  (Id., Count 2.)  In Count Three, Holley and Iamnaita are charged with insider trading in connection with another purchase of 6,050 shares of Home Diagnostics stock by Iamnaita on January 20, 2010.  (Id., Count 3.)  In Count Four, Holley and Iamnaita are charged with insider trading in connection with Iamnaita's purchase of 6,000 shares of Home Diagnostics stock on January 21, 2010.  (Id., Count 4.)  These charges have nothing to do with Investor #4 and the allegations pertaining to Investor #4 have nothing to do with these charges.  See United States v. Alsugair, 256 F. Supp. 2d 306, 317 (D.N.J. 2003) (recognizing that a motion to strike surplusage should be granted "wherein it is clear that the allegations contained therein are not relevant to the charge made") (quotation marks omitted).

Accordingly, all references, and allegations pertaining, to Investor #4 must be stricken as irrelevant, prejudicial surplusage.  (Indictment, Counts One through Four, ¶¶ 1(i), 2-7, 29-30.) See United States v. Jardine, No. 04-219, 2004 U.S. Dist. LEXIS 20414, at *14-15 (E.D. Pa. Oct. 12, 2004) ("The Government cannot 'elect' to include in an indictment information that is not essential to the offense charged if such information is prejudicial to Defendants.").

    2.    <u>All References To Investors # 2 And 3 From Counts One Through Four Should Be Struck As Surplusage</u>

Similar to Investor #4, the Indictment contains tipping allegations involving Investors #2 and #3 in the securities fraud counts (Indictment, Counts One through Four, ¶¶ 2-7, 23-28), however, the alleged tipping of inside information to these particular investors does not serve as the basis for any of the securities frauds counts.  (Id., Counts One through Four, ¶ 31.)  Instead, the securities fraud counts only involve Holley (as tipper) and Investor #1 (as tippee) (Count

One) and Holley (as tipper) and Iamnaita (as tippee) (Counts Two, Three and Four).  It is unnecessary and highly prejudicial to include these allegations involving Investors #2 and #3 in Counts One through Four when they in no way relate to the securities fraud counts.  See Jardine, 2004 U.S. Dist. LEXIS 20414, at *14-15.

In addition, just like Investor #3, the conspiracy offense does not charge Investors #2 and #3 as coconspirators with Holley and Iamnaita nor does it charge them with being involved in any overt acts.  (Indictment, Count Five, ¶¶ 2-3.)  Only Holley and Iamnaita are alleged to have been conspirators and the alleged overt acts involved only Holley, Iamnaita and CW-1 and were in connection with Iamnaita's purchase of Home Diagnostics stock on January 19, 2010.   (Id.)  The wire fraud count likewise does not involve Investors #2 or #3; rather, it involves a wire transfer alleged caused by Holley and Iamnaita from CW-1's bank account to effect Iamnaita's purchase of Home Diagnostics stock on January 19, 2010.  (Id., Count Six, ¶ 2.)

The fact that Investors #2 and #3 are involved in the obstruction of justice counts does not save the allegations pertaining to them in the securities fraud counts from being stricken.  First, the obstruction of justice counts do not reallege the specific tipping allegations pertaining to Investors #2 and #3, which are set forth in ¶¶ 23-28 of Counts One through Four; rather, they only reallege paragraphs 1 through 5 and 8 through 20 of Counts One through Four.  (Id., Counts Seven and Eight, ¶ 1.)  Second, although ¶¶ 1(g), (h), and 2-5 of Counts One through Four, which are realleged in the obstruction of justice counts, contain generic allegations involving Investors #2 and #3, those allegations do not belong in Counts One and Four in the first place because, as discussed above, they are not essential to the securities fraud counts charged.

Accordingly, all references to Investors #2 and #3 should be stricken from Counts One through Four as irrelevant, prejudicial surplusage.  (Indictment, Counts One through Four, ¶¶ 1(g), (h), 2-7, 26-30.)

3.       References To "Others" And "Other Conspirators" Should Be Struck From The Indictment As Surplusage.

The Indictment is replete with references to "and others" and contains a reference to "other conspirators."  (Indictment, Counts One through Four, ¶ 2)("GEORGE HOLLEY and PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4 *and others known and unknown*, participated in an insider trading scheme by defendant GEORGE HOLLEY disclosing material, nonpublic information ("Inside Information") and defendants PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, *and others* executing securities transaction based on Inside Information pertaining to Home Diagnostics . . . ."); id., ¶ 3 ("As Chairman of Home Diagnostics, defendant GEORGE HOLLEY obtained Inside Information and disclosed this Inside Information to defendant PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, *and others* . . . ."); id., ¶ 4 (Defendant GEORGE HOLLEY disclosed the Inside Information to defendant PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, *and others* in breach of his duty of confidentiality to Home Diagnostics and with the understanding that defendant PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, *and others* would use the Inside Information to purchase and sell securities); id., ¶ 5 ("Defendant PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, *and others* . . . executed securities transactions on the basis of this Inside Information . . . ."); id., ¶ 6 ("The object of the insider trading scheme was for defendant GEORGE HOLLEY, defendant PHAIROT IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, *and others* to obtain money by purchasing Home Diagnostics securities on the basis of Inside Information . . . ."); id.,

14

¶ 7 ("The manner and means by which defendants GEORGE HOLLEY and PHARIOT [sic] IAMNAITA, Investor #1, Investor #2, Investor #3, Investor #4, ***and others*** accomplished the object of the insider trading scheme included, among other things . . . ."); id., Count Five, ¶ 2 ("GEORGE HOLLEY and PHAIROT IAMNAITA did knowingly, willfully, and intentionally conspire and agree with each other ***and others*** to commit offenses against the United States, namely, securities fraud . . . ."); id., ¶ 3 ("defendants GEORGE HOLLEY and PHAIROT IAMNAITA ***and their coconspirators*** committed or caused to be committed the following overt acts . . . .") (emphasis supplied).  These references should be stricken as irrelevant, prejudicial surplusage because they suggest that the Defendants were part of a larger scheme and conspiracy than what is explicitly charged in the Indictment.

In United States v. Alsugair, 256 F. Supp. 2d 306 (D.N.J. 2003), Judge Orlofsky granted a motion to strike the words "and others" as surplusage from an indictment.  256 F. Supp. 2d at 317-18.  In doing so, the Court stated:

> The superseding indictment makes specific reference to two individuals, Firas and Abdel-Megeed, who were part of the alleged conspiracy to defraud ETS.  The indictment's multiple references to "others," however, implies that there are additional individuals who were involved in the scheme, which could prejudice the defendant by leading the jury to believe that there exists a broader scope of illegal activity than is actually charged in the indictment.  This vagueness of language could certainly prejudice Alsugair.

Alsugair, 256 F. Supp. 2d at 317; see also  United States v. Gatto, 746 F. Supp. 432, 457-58 (D.N.J. 1990) (recognizing that the court had "previously stricken vague language from an indictment where the language is not specifically relevant to all the crimes alleged because such terms may permit the jury to draw improper inferences" and striking the reference to the term "and others").

Here, the Indictment makes specific reference to trades based on inside information provided by Holley to Iamnaita and Investors #1-4 and also specifically identifies Holley and Iamnaita as having agreed to commit securities fraud (Indictment, Count Five, ¶ 2, and CW-1 as being involved with Holley and Iamnaita in committing overt acts in furtherance of the conspiracy (although CW-1 is not identified as a coconspirator) (Id., ¶ 3.)  The Indictment's numerous references to "and others" and its reference to "other conspirators," however, suggests that Holley provided other individuals with inside information for trading purposes and that other individuals were involved in the alleged conspiracy thereby leading the jury to believe that the Defendants were involved in a broader scope of activity than what is expressly charged in the Indictment and resulting in prejudice to the Defendants.

Accordingly, because the vague terms of "and others" and "other conspirators" are irrelevant and prejudicial, they should be stricken from the Indictment.

**B.    Allegations In The Indictment Relating To Holley's Production Of Documents To The Securities and Exchange Commission And References To The Investigation By The FBI and U.S. Attorney's Office In Counts Seven And Eight Should Be Struck As Surplusage.**

1.    Holley Is Not Charged With Impeding An SEC Investigation.

In the charges for obstruction of justice, the Indictment alleges that Holley produced documents to the U.S. Securities Exchange Commission ("SEC") in response to an investigative subpoena.  (Indictment, Counts Seven and Eight, ¶ 6.)  The Indictment further alleges that among these documents were the same analyst and news reports that had been given to Investor #2, even though these documents were not called for by the subpoena.  (Id.)  The Indictment, however, does not charge Holley with impeding any proceeding before the SEC.  Rather, the "official proceeding" he is charged with obstructing is the "the grand jury's, the United States Attorney's Office's, and the FBI's investigation of insider trading in the securities of Home Diagnostics… ."

(Id., ¶ 7.)  Moreover, the Indictment alleges that Holley gave the reports to Investor #2 after he had been approached by Special Agents of the FBI — not after he had been approached by any agents of the SEC.  The allegations concerning Holley's SEC production is thus wholly irrelevant to the obstruction of justice charges, and their inclusion in the Indictment are highly prejudicial in that the allegations improperly imply that Holley somehow impeded a proceeding before the SEC.  Accordingly, paragraph 6 of Counts Seven and Eight must be struck in its entirety.  See United States v. Williams, 203 F.2d 572, 574 (5th Cir. 1953) ("Indirect expressions, implied allegations, argumentative statements, and uncertainty due to generalizations in language" may be stricken from the Indictment).

### 2.   FBI And U.S. Attorney's Office Investigations Are Not Official Proceedings.

In Counts Seven and Eight, the "official proceeding" that Holley is charged with obstructing is "the grand jury's, the United States Attorney's Office's, and the FBI's investigation of insider trading in the securities of Home Diagnostics . . . ."  (Indictment, Counts Seven and Eight, ¶ 7.)  However, an investigation by the FBI or the United States Attorney's Office does not constitute an "official proceeding" as defined in 18 U.S.C. § 1515(a)(1) for § 1512(c)(2) purposes.  The references to the investigation by the FBI and the United States Attorney's Office insinuate that it is a violation of § 1512(c)(2) to impede an investigation by these agencies, when it is not.  Accordingly, these references should be stricken from the Indictment as immaterial, prejudicial surplusage.  (Indictment, Counts Seven and Eight, ¶¶ 2, 7.)

In Counts Seven and Eight of the Indictment, the Government charges Holley with obstruction of justice in violation of 18 U.S.C. § 1512(c)(2), which provides that "[w]hoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years or both."  18 U.S.C. § 1512(c)(2).

17

Specifically, Count Seven of the Indictment charges that in or about November 2009, after learning that Investor #3 had been contacted by Special Agents of the FBI regarding his purchase of Home Diagnostics stock, Holley reminded Investor #3 that he had previously given Investor #3 several analyst reports concerning Home Diagnostics and encouraged Investor #3 to falsely claim that he had purchased Home Diagnostics stock based on those reports rather than based on the inside information provided by Holley.  (Indictment, ¶¶ 5, 7.)   Count Eight charges that on or about December 9, 2010, the day after Special Agents of the FBI contacted Investor #2 regarding his purchases of Home Diagnostics stock, Holley directed his assistant to give Investor #2 analyst and news reports concerning Home Diagnostics stock so that Investor #2 could falsely claim that he had purchased Home Diagnostics stock based on those reports rather than on the inside information provided by Holley.  (Id., ¶¶ 3-4, 7.)  The Indictment alleges that by engaging in the above conduct, Holley "did corruptly obstruct, influence, and impede, an official proceeding, namely, the grand jury's, the United States Attorney's Office's, and the FBI's investigation of insider trading in the securities of Home Diagnostics" in violation 18 U.S.C. §§ 1512(c) and 2 (aiding and abetting).  As discussed below, the Court should dismiss Counts Seven and Eight of the Indictment to the extent they allege that Holley obstructed, influenced and impeded the investigation by the United States Attorney's Office and the FBI because such investigations do not constitute an "official proceeding" within the meaning of the statute.

Section 1515(a)(1) defines "official proceeding" as used in section 1512 as:

> (A)   a proceeding before a judge or court of the United States, a United States magistrate [United States magistrate judge], a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Claims Court [United States Court of Federal Claims], or a Federal grand jury;

> (B)   a proceeding before the Congress;

18

> (C)     a proceeding before a Federal Government agency which is authorized by law; or
>
> (D)     a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

18 U.S.C. § 1515(a)(1)(A)-(D).  Although this definition clearly includes a proceeding before "a Federal grand jury," it does not expressly include investigations by the United States Attorney's Office or the FBI nor does it include, more generally, government investigations.  Because investigations by the FBI and United States Attorney's Office are not court or congressional proceedings nor are they proceedings involving the business of insurance, the issue is whether they constitute "a proceeding before a Federal Government agency which is authorized by law."  Numerous courts that have considered the issue have concluded that such government investigations do not rise to the level of an "official proceeding" as defined in § 1515(a)(1).  See United States v. Phillips, 583 F.3d 1261, 1263 (10th Cir. 2009) (district court determined that a Drug Enforcement Agency investigation is not an official proceeding under the statute); United States v. Ramos, 537 F.3d 439, 463 (5th Cir. 2008) (concluding that "an internal, informal investigation, in its most preliminary stages, of employee violations of an agency policy is not an 'official proceeding'" because the term contemplates a formal environment in which persons are called to appear or produce documents and not simply any investigatory step taken by an agency); United States v. Gabriel, 125 F.3d 89, 105 n.13 (2d Cir. 1997) (noting that although the issue had not been raised by the defendant, if the jury had concluded that the defendant's "sole intent was to interfere with the FBI investigation . . . it would have been compelled to find [the defendant] innocent" of witness tampering under § 1512(b)(1) because "government investigations" are not included in § 1515(a)'s definition of "official proceeding"); United States

v. Ho, 651 F. Supp. 2d 1191, 1197 n.3 (D. Haw. 2009) (describing as "unextraordinary" the "proposition that to violate § 1512(b)(1), the defendant must have foreseen an official proceeding and not a mere investigation"); United States v. Dunn, 434 F. Supp. 2d 1203, 1207 (N.D. Ala. 2006) (holding that ATF investigation was not a "proceeding before a Federal Government agency which is authorized by law" because the phrase clearly "refers to hearings, or something procedurally similar, held before federal agencies"); United States v. Peterson, 627 F. Supp. 2d 1359, 1369 (M.D. Ga. 2008) ("A federal law enforcement agency investigation is not an official proceeding."); United States v. Simpson, No. 3:09-CR-249, 2011 U.S. Dist. LEXIS 76881, at *96-101 (N.D. Tex. July 15, 2011) (dismissing obstruction of justice counts from an indictment where the FBI investigation was a mere "investigatory step" toward the "'official proceedings,' namely the grand jury investigation and the instant proceeding – that developed out of the FBI investigation."); United States v. Black, No. 05 CR 727, 2007 U.S. Dist. LEXIS 81777, at *46-47 (N.D. Ill. Nov. 5, 2007) (the court instructed the jury, inter alia, that an investigation by the United States Attorney's Office does not constitute an "official proceeding"); Hobley v. Lotito, No. 03 C 3678, 2004 U.S. Dist. LEXIS 20844, at *39 n.13 (N.D. Ill. Oct. 13, 2004) ("FBI investigations are not included within the definition of official proceedings provided by § 1515(a)(1)").

The Third Circuit's decision in United States v. Davis, 183 F.3d 231 (3d Cir. 1999), which involved the issue of whether a wiretap investigation is a "judicial proceeding" under 18 U.S.C. § 1503, provides ample support for concluding that an investigation by the FBI or the United States Attorney's Office does not constitute an "official proceeding" as defined in § 1515(a)(1) for § 1512(c)(2) purposes.  In Davis, the defendant was convicted of obstructing justice in violation of § 1503, which requires that a defendant have notice of knowledge of some

judicial proceeding constituting the "administration of justice." 183 F.3d at 239. The judicial proceeding that the defendant was convicted of obstructing was a wiretap investigation. Id. The defendant argued on appeal that his conviction should be reversed because a wiretap investigation was not a judicial proceeding. Id. The government argued in response that a wiretap constitutes a judicial proceeding when it is actively monitored by a federal court. Id. at 240. The Third Circuit rejected this argument, stating:

> Fundamentally, a wiretap order is an investigative method used by the executive branch, not an element of the judicial process. [Citation omitted.] Judicial supervision pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 [citation omitted] does not make wiretaps a function of the judicial branch, but rather ensures that wiretaps – searches – are carried out within the confines of the Fourth Amendment. [Citation omitted.]
>
> We conclude that a wiretap order is more like a search warrant than it is like a grand jury and that its pendency does not constitute the "administration of justice" within the meaning of § 1503.

Id. Similarly here, the questioning of the investors by the FBI and the United States Attorney's Office was simply an investigative tool — it did not bear any marks of an "official proceeding" such as a hearing or something procedurally similar.

Indeed, the common understanding of the term "proceeding" connotes a judicial or administrative action or hearing, not an investigation. See Dunn, 434 F. Supp. 2d at 1207 ("the common and ordinary understanding of 'proceeding' connote[s] a hearing"); Black's Law Dictionary 1324 (9th ed. 2009) (defining "proceeding" as, inter alia, "[t]he regular and orderly progression of a lawsuit"; "[a]ny procedural means for seeking redress from a tribunal or agency"; "[a]n act or step that is part of a larger action"; and "[t]he business conducted by a court or other official body; a hearing"). Moreover, as the Dunn Court explained, "the term 'proceeding' is used throughout § 1515(a)(1) to describe events that are best thought of as hearings (or something akin to hearings): for example, federal court cases, grand jury testimony,

Congressional testimony, and insurance regulatory hearings, 18 U.S.C. § 1515(a)(1)(A), (B) & (D)." Dunn, 434 F. Supp. 2d at 1207.

Certainly, as the court in Dunn recognized, "[h]ad Congress intended for an investigation, standing alone, to be an 'official proceeding,' it could easily have included 'investigations into violations of the federal criminal statutes' among the definitions in § 1515(a)(1)." Id. at 1208.

Even if the meaning of "official proceeding" was less than clear, the Court must resolve any ambiguity in favor of Holley under the rule of lenity. See United States v. Flemming, 617 F.3d 252, 269 (3d Cir. 2010) ("The rule of lenity provides that when ambiguity in a criminal statute cannot be clarified by either its legislative history or inferences drawn from the overall statutory scheme, the ambiguity is resolved in favor of the defendant.") (quotation marks omitted); Ramos, 537 F.3d at 464 (holding alternatively that "the rule of lenity requires the conclusion that 'official proceeding' in § 1512 (c) does not embrace the agency investigation at issue here"); Simpson, 2011 U.S. Dist. LEXIS 76881, at *96-99 (granting motion to dismiss obstruction of justice counts in an indictment where court not conclude that the FBI investigation was an "official proceeding" under a narrow construction of the term, as required by the rule of lenity).

Accordingly, because the investigation by the FBI and the United States Attorney's Office does not constitute an "official proceeding" as defined in 18 U.S.C. § 1515(a) for purposes of 18 U.S.C. § 1512(c), the Court should strike from the Indictment the references to the investigation by the FBI and the United States Attorney's Office in ¶¶ 2 and 7 of Counts Seven and Eight of the Indictment.

## **CONCLUSION**

For the reasons set forth above, Defendants, George Holley and Phairot Iamnaita, respectfully request that the Court enter an Order dismissing Counts One through Six as duplicitous, merging Counts Two through Four as multiplicitous, and striking the surplusage from the Indictment.

Dated: November 29, 2011

Respectfully submitted,

MARINO, TORTORELLA & BOYLE, P.C.
Attorneys for Defendant George Holley

By: _____
KEVIN H. MARINO

CRITCHLEY, KINUM & VAZQUEZ, LLC
Attorneys for Defendant Phairot Iamnaita

By: /s/ Michael Critchley _____
MICHAEL CRITCHLEY